**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

DINA M. SCHMIDT,

Plaintiff,

v.

ANGEN TRANSIT MANAGEMENT, INC., a Minnesota corporation; ANGEN TRANSPORTATION, INC., a Minnesota corporation; UTOPIA TOURS, INC., a Minnesota corporation; and STEVEN ANGEN, an individual,

Defendants.

Civil No. 01-229 (JRT/RLE)

**MEMORANDUM OPINION AND ORDER**

---

Diane M. Odeen and James H. Kaster, NICHOLS KASTER & ANDERSON, 4644 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for plaintiff.

Kerry L. Middleton and Donald C. Mark, Jr., FAFINSKI MARK & JOHNSON, P.A., 775 Prairie Center Drive, Suite 400, Eden Prairie, MN 55344, for defendants.

Plaintiff Dina Schmidt ("Schmidt") is suing her former employer, defendant Angen Transit Management, Inc. ("ATMI") and its co-defendants for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*, the Minnesota Human Rights Act, Minn. Stat. §§ 363.01 *et seq.*, and 42 U.S.C. §§ 1981. Schmidt is also suing for defamation under Minnesota law. This matter is now before the Court on

FILED 3-31-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. 3-31-03
DEPUTY CLERK

defendants' motion for summary judgment. Schmidt does not object to defendants' motion on the defamation count. Accordingly, the Court will grant defendant's motion as to Count IV of the First Amended Complaint. This motion therefore addresses only Schmidt's three counts alleging discrimination.

## BACKGROUND

Schmidt, who is of Hispanic heritage, worked as a dispatcher for defendant ATMI from March 1996 to February 1999. ATMI is owned and operated by defendant Steven Angen ("Angen") and his wife, Elaine. ATMI was under contract with a public transit agency called Rainbow Rider, which provides public transportation for social service agencies in central Minnesota. ATMI provided drivers, dispatchers, and maintenance on buses operated by Rainbow Rider. ATMI was created solely to service the Rainbow Rider contract, which ended in 1999. ATMI is no longer in active business.

The Angens also own and operate defendant companies Angen Transportation, Inc. ("ATI"), which provides school bus services, and Utopia Tours, Inc. ("Utopia"), a travel agency. All three corporations have headquarters at the Angens' home in Garfield, Minnesota. Schmidt understood herself to be an employee of ATMI. Her paychecks and W-2 forms identified ATMI as her employer, although documentation of her pre-employment drug test lists her employer as Utopia Tours. (Odeen Aff. Ex. A ("Schmidt Dep.") at 28; Odeen Aff. Ex. O.) As a contractor for Rainbow Rider, Schmidt worked out of that agency's office.

Schmidt was hired after interviewing with her ATMI supervisor, Dan Botner ("Botner"), and the transit director of Rainbow Rider, Beth Hendrickson. Schmidt's job duties included answering phones, arranging pick up and drop off of customers, and keeping track of rides. An important part of this job involved telephone contact with customers.

Schmidt succeeded in many aspects of her job at ATMI, and Botner elevated her to head dispatcher a few months after hiring her. Botner also recommended that Schmidt receive periodic pay raises, making her the highest-paid dispatcher during her employment at ATMI. In the eyes of ATMI, however, there was a significant stain upon Schmidt's performance record. This involved her treatment of Rainbow Rider's customers, which Rainbow Rider considered rude. Schmidt received two written warnings about her work performance, in December 1998 and January 1999. Both warnings noted that Schmidt had a problem with "rudeness and terseness," and the second warning referred to a specific customer complaint. (*See* Middleton Aff. Ex. I, J.) Schmidt argues that her co-workers never observed her being rude, and that Botner treated her more harshly than other employees.

It is clear that Schmidt and Botner had a strained relationship. For example, at one point in May 1998, Botner met with Schmidt about her performance, allegedly calling her a "disgrace" and saying that ATMI and Rainbow Rider were "ashamed of her." (Schmidt Dep. at 106-07.) During this meeting Schmidt became upset, pointed her finger at Botner, and told him that she would no longer meet with him alone.

On February 14, 1999, the Rainbow Rider board met and discussed various problems that the agency had with ATMI. According to the meeting minutes, Angen and Botner claimed that some of the problems were related to "things going wrong at dispatch," and that "one dispatcher would be terminated." (Odeen Aff. Ex. Z.) The next day's issue of the local paper quoted Angen as saying that he "intended to fire a dispatcher." (Odeen Aff Ex. AB.) The following day, Schmidt met with Botner and Angen at their request. Also present was Rainbow Rider's operations manager, Eamon Byrne ("Byrne"). Botner and Angen testified that they planned to cut back Schmidt's hours and reassign her to work that did not involve contact with the public. They contend that they offered this to Schmidt as her only option to continue working at ATMI, and she refused. Schmidt contends she pressed Angen on whether he announced at the meeting that she would be fired. When Angen did not answer, Schmidt claims, he became upset and fired her. Byrne claims not to remember details of the meeting, other than that Schmidt was asking for documentation of why she was being fired, and that Angen "lost his temper [and Schmidt] got fired." (Odeen Aff. Ex. E ("Byrne Dep.") at 143.)

Schmidt alleges that harsh treatment by Botner, culminating in her termination, was motivated by racial animus. Defendants claim that Schmidt was fired because she was consistently rude to customers, was insubordinate, refused to change her behavior, and because ATMI was pressured by Rainbow Rider to fire her.

## ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

## II. Single Employer

Defendants argue that the three Angen companies – ATMI, ATI, and Utopia – are completely distinct. They further contend that Schmidt had no relationship with ATI and Utopia, so she therefore states no complaint against those companies and they should be dismissed. Schmidt argues that the companies are so interrelated that the Court should treat them as a single employer.

To determine whether the three Angen companies are a joint employer for purposes of this case, the Court must consider four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 392 (8th Cir. 1977); *Scheidecker v. Arvig Enterprises, Inc.*, 122 F. Supp. 2d 1031, 1037 (D. Minn. 2000). No one factor is dispositive, but courts have recognized that the third factor – centralized control of labor relations – is the most important. *Scheidecker*, 122 F. Supp. 2d at 1038; *Fish v. Ristvedt*, 192 F. Supp. 2d 1024, 1029 (D.N.D. 2002); *Johns v. Harborage I, Ltd.*, 585 N.W.2d 853, 858 (Minn. Ct. App. 1998).

Defendants concede that there is common ownership of all three Angen companies, but argue that all the other factors indicate that the companies are separate. The first factor, interrelation of operations, can be satisfied when the two companies share administrative services, equipment, office space, or employees. *Scheidecker*, 122 F. Supp. 2d at 1038; *Fahey v. Avnet*, 525 N.W.2d 586, 572 (Minn. Ct. App. 1994). Here, the companies all have the same headquarters, the Angen home, (Odeen Aff. Ex. P); there is some evidence that the companies briefly shared employees, (Odeen Aff. Ex. D

("Angen Dep.") at 23-24); and Utopia was apparently used as a training facility for ATMI employees. (Odeen Aff. Ex. F ("Peabody Dep.") at 20.) Significantly, although defendants contend that Schmidt was solely an ATMI employee, her pre-employment drug test form lists Utopia as her employer. (Odeen Aff. Ex. O.) Companies' use of each other's personnel forms is evidence of interrelation. *Johns*, 585 N.W.2d at 858-59. The Court thus finds that the operations of the three companies were interrelated.

Courts have found the second factor, common management, when the same individuals manage separate companies. *Scheidecker*, 122 F. Supp. 2d at 1038; *Johns*, 585 N.W.2d at 859. Here, the boards of directors of all three Angen companies are identical, consisting of Steve and Elaine Angen. This is clearly sufficient to fulfill the second factor. *See Scheidecker*, 122 F. Supp. 2d at 1038 (finding common management where the boards of directors are "nearly mirror-images of one another").

The third and most important factor, centralized control of labor relations, is also satisfied. Evidence has been submitted that Angen was personally in charge of personnel and management for at least two of the three companies. For example, Angen testified that he decided to cut back Schmidt's hours, even though he was not her supervisor. When asked what gave him the right to make that decision, he responded, "I write the checks." (*See* Angen Dep. at 47.) This, combined with other testimony that both Steve and Elaine Angen were involved in the handling of employee relations shows that the there was centralized control of labor relations. (*See, e.g.*, Odeen Aff. Ex. Q at ATM 121) (stating that questions or concerns about company policies should be brought to Steve or Elaine Angen).

As noted above, defendants concede that there is common ownership of the three Angen companies, thus satisfying the fourth factor. Because all four factors have been met, the Court will treat AMTI, ATI, and Utopia as a joint employer and will not dismiss ATI and Utopia.

## II. Discrimination Claims

### A. Disparate Treatment

The Court analyzes Schmidt's claims under Title VII, § 1981, and the MHRA using the burden-shifting process laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Smith v. Datacard Corp.*, 9 F. Supp. 2d 1076, 1078-78 (D. Minn. 1998). First, Schmidt must establish a prima facie case of discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134-35 (8th Cir. 1999). The burden then shifts to defendants to articulate a legitimate nondiscriminatory reason for firing her. *Reeves*, 530 U.S. at 142; *Kiel*, 169 F.3d at 1134-35. If defendants can do this, the burden shifts back to Schmidt to demonstrate that defendants' articulated reason is simply a pretext for discrimination. *Reeves*, 530 U.S. at 143; *Kiel*, 169 F.3d at 1134-35. Defendants argue that Schmidt has not made out a prima facie case of discriminatory discharge, and that even if she has, she has not shown that defendants' legitimate nondiscriminatory reason is pretext.

To make out a prima facie case of discriminatory discharge, Schmidt must show that: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; and (3) she was discharged. *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d

1304, 1307 (8th Cir. 1984); *Evans v. Ford Motor Co.*, 768 F. Supp. 1318, 1326 (D. Minn. 1991). The parties do not dispute that Schmidt, a Hispanic, is a member of a protected group or that she was fired. Defendants do argue, however, that Schmidt cannot demonstrate a prima facie case because she was not performing her job satisfactorily. As discussed above, there is evidence in the record that Schmidt performed her job well, and evidence that she was sometimes a problematic employee who had trouble dealing with customers. This determination is not crucial, however, because even if Schmidt has made out a prima facie case of discrimination, she has not demonstrated that defendants' legitimate non-discriminatory reason for firing her was pretextual.

Schmidt cites several instances of alleged disparate treatment, all of which, she claims, were motivated by her Hispanic heritage. For each of these, defendants have either articulated a legitimate non-discriminatory reason or have shown that they treated similarly situated non-Hispanic employees the same as Schmidt. First, Schmidt claims that she was denied mileage reimbursement for her drive to work. Defendants contend that Schmidt misunderstood the company reimbursement policy, and that she did not qualify for reimbursement. (*See* Odeen Aff. Ex. C ("Botner Dep.") at 17; Odeen Aff. Ex. Q at ATM 130.) Schmidt provides no evidence that ATMI did not follow its policy. Second, Schmidt claims that Botner forced her to take a "map test" of the Rainbow Rider service area, and that she would be fired if she did not score perfectly. Schmidt argues that no other dispatcher was forced to take such a test. Defendants contend that all employees were required to undergo some type of training to familiarize them with the area. Third, Schmidt states that she was profiled in an employee newsletter that

highlighted her Hispanic heritage, and that the article offended her. However, she does not remember exactly what the article said, nor does a copy appear in the record. Fourth, Schmidt states that she was not invited to the 1998 company Christmas party. Botner conceded that he did not invite her to the party because, essentially, he did not like her. Defendants note, however, that Botner also did not invite a non-Hispanic employee, Tracy Peabody, for the same reason. (*See* Botner Dep. at 15-16.) Defendants also note that Schmidt was invited to other company parties after Botner learned she was Hispanic. Fifth, Schmidt states that she did not receive a Christmas bonus in 1998. Defendants point out that Schmidt did receive Christmas bonuses in other years, even after Botner learned that she was Hispanic. Moreover, defendants state that other non-Hispanic employees did not receive Christmas bonuses in 1998. Finally, Schmidt argues that ATMI changed its disciplinary policy in a way that discriminated against her.[1] Defendants argue that this change could not be discriminatory because it applied equally to all ATMI employees.

It is clear from the record that Botner and Schmidt did not get along, and that Botner might have even had some personal animus toward Schmidt. Schmidt argues, however, that the poor treatment from Botner was "intimately connected to Botner's bias against [her] as an Hispanic employee." (Pl. Br. at 18.) Even if all of the facts Schmidt has asserted are true, however, the Court finds that she has not demonstrated that they

[1] In January 1999, ATMI changed its policy to allow for immediate termination in cases of "serious/reckless violations and insubordination." (Odeen Aff. Ex. Q at ATM 147.) Previously, the policy provided for progressive discipline, moving from verbal and written warnings to suspension before an employee could be terminated. It is clear that the policy change applied to all employees.

related to her ethnicity. Schmidt has the ultimate burden of demonstrating that defendants intentionally discriminated against her. *Reeves*, 530 U.S. at 143. To do this, she must provide evidence, not conclusions, that defendants' asserted reasons for terminating her are pretext. Despite the litany of poor treatment that Schmidt describes, she has provided little to no evidence that ATMI fired her because she is Hispanic, and not because she was insubordinate, rude, or because Rainbow Rider pressured ATMI to do so. This last point is perhaps the most crucial in undermining Schmidt's claims of discrimination. Defendants provide evidence that they received specific pressure from ATMI's only client, Rainbow Rider, to fire Schmidt because of her treatment of Rainbow Rider customers. (*See* Odeen Aff. Ex. B ("Hendrickson Dep.") at 53-54; Angen Dep. at 41-42; Botner Dep. at 23-24.) This is clearly a legitimate non-discriminatory reason, and Schmidt provides no evidence to rebut it.

Schmidt also claims that Botner frequently criticized her accent, and made several unfavorable comments that referred to her ethnicity. These included statements that Schmidt should "learn to speak West Central [Minnesota]" or she "would never fit in," and that Schmidt was "south of the border." (Schmidt Dep. at 153, 161; Hendrickson Dep. at 56-57; Byrne Dep. at 32.) It is undisputed that Schmidt's accent was the same during her employment as when Botner hired her.

The record shows that these comments, even if Botner did utter them, do not rise above the level of "stray remarks," which, standing alone, may not give rise to an inference of discrimination. *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 922 (8th Cir. 2000). Schmidt argues that although such remarks are not sufficient on their own, they

may give rise to an inference of discrimination when considered in conjunction with other evidence of pretext. *Id.* at 923. Thus, the Court finds that these remarks, like Schmidt's other evidence, does not give rise to any inference of pretext. Because Schmidt cannot rebut defendants' legitimate non-discriminatory reasons for her termination, the Court must grant defendants' motion for summary judgment on her discriminatory discharge claims.

### B. Hostile Work Environment

Schmidt also claims that Botner's treatment created a hostile work environment. To prevail on this claim, Schmidt must establish: (1) that she belongs to a protected group; (2) that she was subject to unwelcome harassment; (3) a causal nexus between the harassment and her membership in the protected group; and (4) that the harassment affected a term, condition, or privilege of her employment. *Palesch v. Missouri Comm. on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000); *Goins v. West Group*, 635 N.W.2d 717, 725 (Minn. 2001).[2] Furthermore, the complained of conduct "must have been severe or pervasive enough to create an objectively hostile work environment." *Palesch*, 233 F.3d at 566 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

---

[2] There is also a fifth requirement, that plaintiff's employer knew or should have known of the harassment and failed to take proper action. *Palesch v. Missouri Comm. on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000). This element does not apply when the alleged harassment was done by plaintiff's supervisor. *Id.* at 566 n. 5; *Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999). Because Schmidt alleges that she suffered harassment at the hands of her supervisor, Botner, the fifth element does not apply in this case.

Schmidt alleges that Botner and Angen were trying to make her work environment "unbearable" so that she would quit, and cites all the same allegations of poor treatment that she detailed in support of her discriminatory discharge claim. Defendants contend Schmidt has not demonstrated that any of Botner's conduct was so severe and pervasive as to create an objectively hostile work environment. Even assuming that Schmidt has proven an objectively hostile environment, however, the Court finds that Schmidt's claim fails because she has not established a causal nexus between any hostile treatment and the fact that she is Hispanic.

As with her claims of pretext, Schmidt provides ample evidence of poor treatment by Botner. However, she does not support these allegations with evidence that the harassment was connected to her ethnicity. The evidence suggests that it is equally likely, if not more so, that Botner simply did not like Schmidt and wanted to make her life at ATMI difficult. While this might demonstrate poor management, it does not create a hostile work environment under applicable anti-discrimination laws. *See Williams v. City of Kansas City, Missouri*, 223 F.3d 749, 753 (8th Cir. 2000) ("Not all unpleasant conduct creates a hostile work environment.") Schmidt has offered "little more than speculation and conjecture to make the required connection from the mistreatment she alleges to [an ethnicity]-based animus." *Palesch*, 233 F.3d at 567. Therefore, she has not demonstrated a genuine issue of material fact as to whether she was subjected to workplace harassment **because** she is Hispanic. Accordingly, the Court grants defendants' motion for summary judgment on Schmidt's hostile work environment claims.

It is true that Schmidt's termination was handled in a rather inartful manner, not untypical of a small business lacking a professional labor relations staff. After a careful review of the record, however, the Court is satisfied that Schmidt's national origin did not play a role in her termination. The complaints received by defendants and Schmidt's observed behavior do not constitute a pretext for national origin discrimination.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 18] is **GRANTED in part** and **DENIED in part** as follows:

1. Defendants' motion to dismiss defendants Angen Transportation, Inc. and Utopia Tours, Inc. [Docket No. 18] is **DENIED**.

2. Defendants' motion for summary judgment [Docket No. 18] is **GRANTED** on all counts of the Amended Complaint [Docket No. 6].

4. Plaintiff's Amended Complaint is **DISMISSED** with prejudice [Docket No. 6].

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2003
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
## District of Minnesota

700 Federal Building
316 North Robert Street
St. Paul, MN 55101

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

417 Federal Building
515 West First Street
Duluth, MN 55802

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.